# BRISTOL COUNTY.

HENRY B. ROGERS et al. vs. DANIEL ROGERS et als.

Residuary testamentary disposition as follows: *Twelfthly*, I do hereby give, bequeath, and devise to my brother Daniel Rogers in trust, with power to name and appoint a successor or successors, all the residue and remainder of my estate, real, personal, and mixed, not herein otherwise bequeathed and devised, to have and to hold the same for the following purposes, viz.: In the first place; and before any other claims on this fund are satisfied, to pay any deficiency each and every year it occurs on the three thousand dollars per year given to my wife Maria Rogers under the fourth bequest of this will. In the second place, to divide all the remainder of the property hereby devised and bequeathed after the decease of my wife Maria Rogers and before his own decease (if he so chooses to do) equally between his eight children now living, or their legal heirs, *per stirpes* and not *per capita*, if any of them be dead when this bequest takes effect, and to trustee all or any part of the property so divided among his eight children or their heirs-at-law through his blood, by placing it safely in the hands of two or more honest and competent persons to hold and pay the income thereof to his eight children, or their heirs-at-law through his blood, *per stirpes* and not *per capita* as it is received; and that part of it which may belong to his daughters, married or single, to be so trusteed as that the income thereof shall be paid to them or either of them on their own receipt, and after the same shall have accrued, and without the intervention of any creditor or husband, and all the property so trusteed on the said daughters' decease to descend to their own children, or in default thereof to their heirs-at-law through their father's blood, *per stirpes* and not *per capita*, and I do hereby devise and bequeath the same accordingly.

*Held*, that neither the delay in the division of the residuum, nor the fact that the persons who are to take are to be fixed by reference to the time *when this bequest takes effect*, nor the powers given Daniel Rogers to trustee the property divided, prevented the beneficial interests from vesting and from becoming vested estates at the testator's death.

*Held*, further, that the testator's widow consenting, the beneficiaries desiring it, and the trustee wishing it, a decree might be entered giving the sanction of the court to an immediate division.

*Held*, further, that the trustee might relinquish his power to create new trusts after the death of the testator's widow.

One of the eight children of Daniel Rogers living when the will was made died before the testator childless and intestate.

*Held*, that his share passed to his brothers and sisters as a substitutional gift.

Another of the said children being a married woman.

*Held*, that her wishes as to a settlement should be consulted.

The intention of the testator must govern the construction of his will if such intention can be ascertained.

Estates are construed to be vested unless the will creating them contains some provision which requires them to be contingent, or unless the testator's language clearly denotes contingency.

BILL IN EQUITY to obtain a judicial construction of the will of Robert Rogers, and to fix the rights of the parties in interest under it.

In 1862 Robert Rogers made the will in question. At that time, he was seventy years of age, and his wife was sixty-seven. He had no children or issue living ; neither had he any near relatives living except his brother Daniel, and his said brother's eight children. Of these six were sons, and two were daughters. One of the sons, James S., died unmarried and intestate before the testator. When the will was made, one of the daughters was married and one was single. The single daughter subsequently married and died after the testator's death, leaving a husband and an infant daughter. The ages of these nieces and nephews, at the time the will was made, ranged from forty-six to twenty-two years. The testator died in April, 1870, childless.

In the first clause of his will he directed the payment of his just debts. In the second clause he gave to his wife, outright, all his furniture, plate (excepting that belonging to his late mother), his horses and carriages, and all the farming stock and farming utensils on the farm at Papoose-Squaw Point, which was his residence at the time of his death, and which was the property of his wife. In the third clause he gave to his wife, outright, the half of a lot of land, the other half of which was owned by her sister, and he also directed that whatever stood to his wife's credit on his ledger should be paid to her. In the fifth clause of his will the testator made a specific legacy to his cousin Seraphine E. Noyes of certain indebtedness. In the sixth clause he gave to Martha C. Foster, a *quasi ward* of his, who had for years resided in his family, the income of fifty-five shares of stock in the Providence and Worcester R. R. Co. during her life, and after her death, the stock to Robert Rogers Howard. In the eighth clause the testator gave to said Robert R. Howard all indebtedness due from him to the testator. In the ninth and tenth clauses the testator gave to certain cousins of his of the Noyes family certain indebtedness due him from them. In the eleventh clause he gave to Wm. Henry Mosher, a former ship-master of his, the income for life of fifty shares of Webster Bank stock, and at said Mosher's death the stock to Robert R. Howard.

The fourth, seventh, twelfth, and thirteenth clauses of the will are as follows : —

" *Fourthly.* I do give and bequeath to my executors hereafter

named, in trust for the use and improvement of my wife Maria Rogers, during her natural life (the income or dividends on which only are to be applied and appropriated to her use and benefit), and in lieu of all claims of dower on any part of my estate, viz.: two hundred full shares of the stock in the Bank of Commerce in the city of New York; one hundred shares of the stock of the Bank of the State of New York in the city of New York; one hundred shares of the stock in the Hartford and New Haven Railroad Company; one hundred and twenty shares of the stock of the New York and New Haven Railroad Company; one hundred and seventeen shares of the stock in the Boston and Providence Railroad Corporation; one hundred and forty-two shares in the Old Colony and Fall River Railroad Corporation; all of which stocks, at their par value, amount to seventy-seven thousand and nine hundred dollars; and after my wife's decease it is my will that fifteen hundred dollars per year of the income or dividends of the stocks aforesaid be paid to Charlotte D'Wolf, her sister, during the term of her natural life, and that the remainder of said income or dividends be divided equally among the children of my brother Daniel Rogers, or their legal heirs-at-law, until the decease of the said Charlotte D'Wolf; and that after that event the said stocks be equally divided among the children of my brother Daniel Rogers, or their legal heirs-at-law, or held in trust by my said brother, with power of naming substitutes at his option, and I do bequeath the same accordingly. And I do desire furthermore and do hereby order and direct that in case the aforenamed bank and railroad stocks, or those which may be hereafter substituted for them, do not produce in dividends or income each and every year of my wife Maria Rogers's life after my decease the sum of three thousand dollars, that the amount which the said dividends or income may fall short of that sum be paid to her by my residuary legatee, Daniel Rogers, in trust, out of the residue of my estate not specifically and unconditionally given away, at the expiration of each and every year that such deficiency may occur.

" *Seventhly.* I do hereby give and bequeath in trust to Henry A. Rogers, of Providence, with the power of appointing successors or substitutes, for the benefit and use of Robert Rogers Howard, now of Kalamazoo, Michigan (who was named by my

late honored mother, with a request that I would liberally provide for him), one hundred full shares of the stock of the Bank of Commerce in the city of New York; fifty shares in the Bank of the State of New York in the city of New York; one hundred shares in the Old Colony and Fall River Railroad; one hundred shares in the New York Central Railroad; one hundred and twenty-five shares in the Eastern Railroad of Massachusetts; one hundred and twenty-five shares in the Northern Railroad of New Hampshire, the dividends or income on which bank and railroad stocks to be paid to the said Robert Rogers Howard during his life, and after his decease to be equally divided among his lawful issue, or their lawful children; if any or all of his children be dead, '*per stirpes*' and not '*per capita.*' But in case said Robert Rogers Howard dies without lawful issue, then all said stocks are to be divided equally among the children of my brother Daniel Rogers, now living, and their legal heirs-at-law through their father's blood, '*per stirpes*' and not '*per capita*,' and I do give and bequeath the same accordingly.

"*Twelfthly.* I do hereby give, bequeath, and devise to my brother Daniel Rogers, in trust, with power to name and appoint a successor or successors, all the residue and remainder of my estate, real, personal, and mixed, not herein otherwise bequeathed and devised, to have and to hold the same for the following purposes, viz.: In the first place and before any other claims on this fund are satisfied, to pay any deficiency each and every year it occurs on the three thousand dollars per year given to my wife Maria Rogers under the fourth bequest of this will. In the second place, to divide all the remainder of the property hereby devised and bequeathed after the decease of my wife Maria Rogers and before his own decease (if he so chooses to do) equally between his eight children now living, or their legal heirs, *per stirpes* and not *per capita*, if any of them be dead when this bequest takes effect, and to trustee all or any part of the property so divided among his eight children or their heirs-at-law through his blood, by placing it safely in the hands of two or more honest and competent persons to hold and to pay the income thereof to his eight children or their heirs-at-law through his blood, *per stirpes* and not *per capita*, as it is received, and that part of it which may belong to his daughters, married or single,

to be so trusteed as that the income thereof shall be paid to them or either of them on their own receipt, and after the same shall have accrued, and without the intervention of any creditor or husband, and all the property so trusteed on the said daughters' decease to descend to their own children, or in default thereof to their heirs-at-law through their father's blood, *per stirpes* and not *per capita*, and I do hereby devise and bequeath the same accordingly.

" *Thirteenthly.* I do hereby authorize and empower my executors and the several trustees under this will, whenever they think it necessary for the security of the property, to sell any part of it and reinvest the same, and whenever any of the stocks are divided and paid off to reinvest the funds at their discretion ; but it is my will that no sales be made without the assent of the party enjoying the income thereof or their legal representatives. Furthermore, if any of the bank or railroad stocks, given and bequeathed or put in trust for the benefit of others by this instrument, shall not be found at my decease standing in my name on the books of the several institutions and companies or corporations named herein, or on either or any of said books, then my will is that my executors pay over to such legatees and trustees for the benefit of others, the market value of such stocks as may be then found wanting on either or any of the books of the said several institutions in my name, if any, and that they the said legatees and trustees for the benefit of others reinvest the said money paid over to them at their discretion ; and I do hereby give and bequeath to the parties separately, that may be found so affected either as legatees or trustees for the benefit of others, the amount necessary to replace the aforesaid deficient stocks, if any, at their respective market values."

The inventory discloses personal estate amounting to upwards of thirteen hundred thousand dollars, and the testator's indebtedness was very small, not amounting to five thousand dollars. The bill sets forth, and the answers admit, that the testator died seised of real estate of the value of fifteen thousand dollars, situated in Rhode Island.

The bill was brought by the children of Daniel Rogers, and also by a child of a deceased daughter against Daniel Rogers, Maria D'W. Rogers, Jonas Williams, and A. Ludlow Case. The

complainants are the beneficiaries under the residuary clause of the will, all being *sui juris* except three, one of whom is *non compos mentis*, one a married woman suing her husband, and the third an infant, who sue by their next friend.

The respondent Daniel Rogers is one of the executors, and is also the trustee under the residuary clause of the will. The respondent Maria D'W. Rogers is the testator's widow and the other executor. The respondent Jonas Williams is the husband of Daniel Rogers's daughter, who died intestate after the testator's death, and is the father of the infant complainant. He is also administrator of his late wife and guardian of his child. The respondent A. Ludlow Case is the husband of one of the complainants: the question as to him being merely whether, if his wife is entitled to what she claims under the testator's will, she is entitled to the equity of a settlement as against him.

*Thomas A. Jenckes & Horatio Rogers*, for the complainants.

1. The children of Daniel Rogers described in the twelfth section of Robert Rogers's will took absolute vested interests at the death of the testator in the whole residuary estate, both income and principal.

The law favors the vesting of estates, and as a will takes effect at the death of the testator, it follows that a devise in favor of a person *in esse* confers an immediately vested interest. And where a testator creates a prior estate, and then goes on to dispose of the ulterior interest expressly, on an event which will determine the prior estate, the words descriptive of such event occurring in the latter devise will be construed as referring merely to the period of the determination of the possession or enjoyment under the prior gift, and not as designed to postpone the vesting. 1 Jarman on Wills, 727 ; Williams on Executors, 1083 ; 1 Roper on Legacies, 557.

The first rule of construction is this: That a bequest to a person, *payable* or *to be paid*, at or when he shall attain the age of twenty-one, or at the end of any other certain determinate term, confers on him a vested interest immediately on the testator's death, as *debitum in præsenti solvendum in futuro*, and transmissible to his executors or administrators: for the words "payable" or "to be paid" are supposed to disannex time from the gift of the legacy, so as to leave the gift immediate, in the

same manner as if the bequest stood singly and contained no mention of time. Williams on Executors, 1083; 1 Roper on Legacies, 554; 1 Jarman on Wills, 733 *et seq.*

The rule has been stated generally by Lord Loughborough to be this: If the day is certain, the legacy is vested; but where it is uncertain, the question will be whether it is in the nature of a condition; for if it is conditional, then, in the very nature of the thing, the time is annexed to the substance of the gift, as in the case of marriage, puberty, or any other situation in life when the arrival of the time is a condition, without which the testator would not have made the gift. *Monkhouse* v. *Holme*, 1 Bro. C. C. 298. See also *Barnes* v. *Allen*, 1 Bro. C. C. 181; *May* v. *Wood*, 3 Bro. C. C. 473.

Where the words of a will are in the present tense, but the direction for the payment is in the future, the fair import of the language is, that there is a present gift to be paid hereafter. A direction in a will for the division of the estate among several persons by the executor, is equivalent to a direction for the payment to the legatees of the irrespective shares; in such a case, the interest is vested and transmissible. See note to *Leaming* v. *Sheratt*, 2 Hare, 14, citing *Packham* v. *Gregory*.

And see as to the general operation of the rule, *Yearwood* v. *Yearwood*, 9 Beav. 327; *Parkin* v. *Wright*, 15 Sim. 83; *Lyon* v. *Coward*, 15 Sim. 287; *In re Thompson's Trust*, 15 Eng. L. & E. 498; *King* v. *Isaacson*, 17 Eng. L. & E. 456; *Hodgson* v. *Smithson*, 25 Eng. L. & E. 245; *Kidd* v. *North*, 27 Eng. L. & E. 481–82; *Cadogan* v. *Ewart*, .7 A. & E. 636; Williams on Executors, 5th Am. ed. 1108; *Staples et al., Trustees*, v. *D' Wolf et al.* 8 R. I. 74; *Moore* v. *Lyon*, 23 Wend. 119.

A bequest *after the death* of a particular person, where an antecedent interest is given in the same will, is generally held not to denote a condition that the legatees shall survive such person, nor to define when the interest shall vest, but only to mark the time when the gift shall take effect in possession. *Chew's Appeal*, 37 Pa. St. 28.

Special attention is called to *Poor* v. *Considine*, 6 Wall. 458. See also *Johnson* v. *Valentine*, 4 Sandf. Ch. 43; *Minning* v. *Batdorff*, 5 Barr, 506; *Rives* v. *Frizzle*, 8 Ired. Eq. 239; *Blanchard* v. *Blanchard*, 1 Allen, 227; *Ferson* v. *Dodge*, 23 Pick. 287; *Moore* v. *Diman*, 5 R. I Rep. 121.

The case is in no manner affected by the exceptions to the rule. The principal of these exceptions, and the only one now necessary to consider, is this: That the rule itself is always subservient to the intention of the testator; and if, therefore, on construing the whole will, it clearly appears that the testator meant the time of payment to be the time when the legacy should vest, no interest will be transmissible to the executors or administrators, if the legatee dies before the period of payment, although the words " payable at," or " to be paid," or other terms of immediate gift be employed in the will. 1 Roper on Legacies, 558 *et seq.*; Williams on Executors, 1083. It is to be remarked that it is a rule controlling this exception, that the intention of the testator to postpone the vesting must be clearly expressed, and with certainty and precision, or the general rule will operate; and that intention to postpone cannot be derived from ambiguous words. *Corbin* v. *Wilson*, 2 Ashm. 178; *Eldredge* v. *Eldredge*, 9 Cush. 516; *Bowker* v. *Bowker*, 9 Cush. 519; *Watson* v. *Woods*, 3 R. I. 226; *Getford* v. *Thorn*, 1 Stock. N. J. 702; *Manderson* v. *Lukens*, 11 Harris, 31; *Bridgewater* v. *Gorden*, 2 Sneed, 5; *In re Thompson's Trust*, 5 De G. & S. 667; *Farrer* v. *Barker*, 9 Hare, 744.

It must be inferred, where the time fixed for the payment of a legacy *is certain*, the testator merely postponed the payment of the legacy. Williams on Executors, 1083; 1 Roper on Legacies, 561, 562.

In the case at bar, the division must be made on the death of the widow; an event absolutely certain to happen at no great distance of time.

" The construction which reads words that are seemingly creative of a future interest, as referring merely to the futurity of possession occasioned by the carving out of a prior interest, and as pointing to the determination of that interest, and not as designed to postpone the vesting, has obtained, in some instances, where the terms, in which the posterior gift is framed, import contingency, and would, unconnected with and unexplained by the prior gift, clearly postpone the vesting. Thus, where a testator devises lands to trustees until A. shall attain the age of twenty-one years, and if, or when, he shall attain that age, then to him in fee, this is construed as conferring on A. a vested estate

in fee simple subject to the prior chattel interest given to the trustees, and consequently, on A.'s death under the prescribed age, the property descends to his heir-at-law; though it is quite clear that a devise to A., if, or when, he shall attain the age of twenty-one years, standing isolated and detached from the context, would confer a contingent interest only." 1 Jarman on Wills, 734; *Boraston's case*, 3 Rep. 19; *Mansfield* v. *Dryard*, 1 Eq. Ca. Ab. 195; also in Gilb. Rep. 36; *Doe dem. Weedon* v. *Lea*, 3 Term Rep. 41; *Edwards* v. *Symons*, 6 Taunt. 213; *Goodright dem. Revell* v. *Parker*, 1 M. & S. 692; *Warter* v. *Hutchinson*, 5 J. B. Moore, 143; also in 2 Brod. & Bing. 249; also in 1 B. & C. 721; *Holcroft's case*, Moore, 486; *Webb* v. *Herring*, Cro. Jac. 416; *Morris* v. *Anderson*, Willes, 293; *Hunt* v. *Moore*, 14 East, 601; *Randall* v. *Doe*, 5 Dow, 202; *Vincent* v. *White*, 15 East, 174; *Hayward* v. *Whitby*, 1 Burrow, 228; *Satterthwaite* v. *Satterthwaite*, 1 W. Black. 519; *Wight* v. *Cundall*, 9 East, 400.

By the twelfth clause of the will, the trustee of the residue of his estate is directed to hold said residue until the death of Mrs. Rogers, on which event the residuary property is to be divided equally among the eight children of the trustee, or their legal heirs, if any of them be dead when the bequest takes effect. The *corpus* of the residue being thus held by said trustee, during the time limited, for the benefit of said parties, the interest of the latter in the whole property, both income and capital, must be held to have vested immediately on the death of the testator.

The second rule of construction adopted by courts for their government, in ascertaining the intention of the testator in cases where a future time is defined for the payment of the legacy, is this: That if the words " payable " or " to be paid " are omitted, and the legacies given *at* twenty-one, or *if, when, in case*, or *provided*, the legatees attain twenty-one, or any other definite period, these expressions annex time to the substance of the legacy, and make the legatee's right to it depend on his being alive at the time fixed for its payment; consequently, if the legatee happens to die before that period arrives, his personal representatives will not be entitled to the legacy. Williams on Executors, 5th Am. ed. 1083; 1 Roper on Legacies, 566.

There is, however, an important exception to the second rule of construction, which is embodied in the words of this second

point.  In cases where the legacy is given at some period, and in
the interim interest is to be paid by trustees, who hold the prop-
erty, to the legatee, or held for his benefit, words which may im-
port a condition precedent to the vesting of the legacy will not
be permitted to have that effect ; on the contrary, they will be
considered as merely descriptive of the *time* when the legatee
was to be let into the possession of the fund, and then, according
to the first rule of construction, the legacy will vest at the death
of the testator, and if the legatee dies before the time limited,
his personal representative will be entitled to the legacy.   And
this applies equally to cases where the income of property is given
for the support and maintenance of legatees, and where it is given
for their benefit generally.   Williams on Executors, *ubi supra ;*
1 Roper on Legacies, 578, and cases there cited ; *Fonereau* v. *Fon-
ereau,* 3 Atkyns, 645 ; *Hanson* v. *Graham,* 6 Ves. Jun. 245 ;
*Parker* v. *Golding,* 13 Sim. 418 ; *Lane* v. *Goudge,* 9 Ves. Jun.
225 ; *Branstrom* v. *Wilkinson,* 7 Ves. Jun. 421 ; *Murray* v. *Al-
denbrook,* 4 Russ. 407 ; *Vivian* v. *Mills,* 1 Beav. 315 ; *Davis* v.
*Fisher,* 5 Beav. 201.

In view of these authorities and the principle which they de-
clare and which governs them, the interest of the parties in the
twelfth clause of the will of Robert Rogers must be held to have
vested on the death of the testator, even should that interest be
held not to have vested under the first rule of construction.

If the first point taken be untenable, it might be sought to
make the vesting of the residue contingent, by claiming that by
the language of the second part of this clause, the testator in-
tended to make the gift of the income a separate and indepen-
dent gift from that of the *corpus* or capital of his residuary
estate.   Dividends and income are undoubtedly the objects of
distinct gifts, wholly independent of the capital.   But in such
cases, the intent of the testator so to separate them must be clear
and distinct, and the language expressing that intent must be
unambiguous and free from all doubt.   *Batsford* v. *Kebbell,* 3
Ves. Jun. 363.   See Roper on Legacies 582, and cases cited.

But it is submitted that the class of cases of which *Batsford* v.
*Kebbell* is an example differs widely from the case at bar.   For
in each of those cases, an immediate particular gift of the divi-
dends alone is first made, and *then* the gift of the fund is made

to depend on an expressed contingency, the intent being to bring the object of the second gift within the operation of the second rule of construction. But in the case at bar, not only are the words " to divide " used so as to bring it clearly within the operation of the first rule of construction ;, but the whole rest, residue, and remainder, is given immediately in express terms in the present tense, to the legatees and their heirs, through a trustee, who holds it for a time for the benefit of said legatees, with a positive direction to divide the property among them on an event which must soon happen.

If we are to give to plain words their plain signification, the interest of the parties named in the twelfth clause of this will, in both income and capital, must be held to have vested on the death of the testator.

The twelfth clause of the will of Robert Rogers disposes of the residue of the testator's estate, and being the gift of a residue, the interest therein of the parties named in said clause must be held to have vested on the death of the testator.

It is an unquestioned rule in the construction of wills, that a bequest of the residue of an estate will always be construed to be vested, for the purpose of preventing an intestacy. *Booth* v. *Booth,* 4 Ves. Jun. 399; *Jones* v. *Macilvain,* 1 Russ. 233 ; *Leake* v. *Robinson,* 2 Meriv. 386.

2. The intention of the testator is the first and great object of inquiry, and to this object technical rules are, to a certain extent, made subservient. 4 Kent's Comm. 534.

It may be remarked in this connection, however, that .the intention of the testator to postpone the vesting must be clearly expressed, and with certainty and precision, or the general rule of construction as to vesting will operate, and that intention cannot be derived from ambiguous words.

The intention of the testator, in the case at bar, as gathered from the four corners of the will itself, is: that not only is the interest of the children of Daniel Rogers in the residue of the testator's estate a vested interest, but the enjoyment of both principal and interest is immediate, excepting only as to so much as will produce the annual sum of $3,000, to guarantee the payment of that amount to the testator's widow.

Upon reading the will, three objects of the testator's bounty appear specially prominent: —

*First.* That in addition to the legacies given outright to his widow, he intended that she should have at least $3,000 a year. To this end, he gives her the income of a fund which the bill states, and the answers admit, has produced $7,000 a year, and never less than $6,000 a year, and which income it is grossly improbable will ever fall below the sum of $3,000 per annum. In case, however, it should fall below said last named sum, the deficit only is to be paid out of the residue of the estate.

*Second.* That he meant to provide liberally for Robert Rogers Howard, of Michigan, and his issue, as shown by the sixth, seventh, eighth, and eleventh clauses of his will.

The reason for this generous bounty as given by the testator, was that Howard " was named by my " (the testator's) " late honored mother, with a request that I " (the testator) " would liberally provide for him."

*Third.* That the testator intended that his own blood relatives, viz., the children of his only brother, should be chiefly benefited by his estate. This is abundantly apparent throughout the whole length and breadth of the will. In the fourth clause he gives them, after his wife's death, the whole income of the fund that produces his wife's annuity, except so much thereof as would produce the annual sum of $1,500, and after his wife's sister's death, he gives them the whole principal of that fund.

It again appears in the seventh clause, where he gives them the large fund set apart for R. R. Howard and his issue, in case the said Howard should die without issue. And, finally, it appears most prominently in the twelfth clause, where he gives them all the residuum, charged only with the empty burden of paying any deficiency in the annual sum of $3,000 to his widow, mentioned in the fourth clause.

It is plain that, after making what he deemed a sufficient provision for his wife, who was far advanced in years, the ties of blood were stronger with him than all others. It is hardly consistent with this manifest purpose displayed throughout that he intended that his nieces and nephews, who seem so near and dear to him, should be barred from any enjoyment of his bounty till after his widow's death, as some of those very nieces and nephews were far along in life, being now over fifty years of age, and being then near fifty, some of them having families of chil-

dren, and one of them, at least, now, having grandchildren. Especially does this seem improbable, as there is no reasonably useful purpose to be subserved by such delay, for it can hardly seem reasonable to any one that an estate of over a million of dollars should be tied up to guarantee the sufficiency of a fund to pay $3,000 a year, which fund has been for a long time, is now, and probably will ever be able to pay an annual sum of twice that amount. Again, it seems highly improbable that the testator meant to defer for years the enjoyment of his bounty by the cardinal objects of that bounty, when he munificently endows, *in præsenti,* a stranger, whose only tie upon him was through his love for his own mother, that stranger having been named by the testator's mother, with the request that the testator would liberally provide for him.

3. This court may properly order that the children of Daniel Rogers shall have the immediate enjoyment and possession of the real and personal estate, they giving sufficient security to meet the contingent charge in Mrs. Robert Rogers's favor upon it. Lewin on Trusts & Trustees (2d Am. ed.), side-page 586; *Poor* v. *Considine,* 6 Wall. 458; *Blake* v. *Bunbury,* 1 Ves. Jun. 194. See the case more fully stated, Ibid. 514; 4 Brown C. C. 21; *Jenkins* v. *Milford,* 1 Jac. & W. 629; *Baylies* v. *Baylies,* 1 Coll. 537; *Horner* v. *Wheelwright,* 2 Jur. N. S. 367; *Smith* v. *Harrington,* 4 Allen, 566.

4. All the trusts in this will are executed trusts, present and not future.

The clauses which speak of new trustees, or of any further or other trust, are to be found in the fourth and twelfth sections of the will.

As the questions which arise under the twelfth section of the will are the most important, and will require a more comprehensive discussion than that under the fourth section, the proper construction of the twelfth section will be considered. In this section Daniel Rogers, the testator's brother, whose name had been used several times in the preceding section, appears as devisee in trust of the entire residuary estate, with certain powers and duties as trustee.

*First.* The proposed new trust is a mere instrument for the collection of the income and its payment over to the married

women themselves, upon their own receipt. In this respect nothing is added to the directions of the previous clause, of which the clause now under consideration must be considered as a mere continuation, confined to the shares of the married women. Nothing is said about the effect of the trust upon the body of the estate, either during the coverture or the life of a married daughter. That remains as under the trust first declared, by which we have seen that the daughters as well as the sons of Daniel Rogers took vested interests in their respective shares. In the second place, this income is to be paid to each married daughter after it shall have accrued. This provision applies only to the duty of the trustee. The beneficiary may, of course, contract debts, with the expectation of paying them out of the accruing income, and the income may in this way be enjoyed and spent before it is due, as effectually as if it had been advanced by the trustee. The use of the word " creditor " is entirely unwarranted, as no trust could protect her property from her own creditors for debts lawfully contracted. *Tillinghast* v. *Bradford*, 5 R. I. 205. There is no restraint upon her as to the alienation of the trust estate during her lifetime, or from disposing of it by will after her decease. Ibid. What is said of the body of the estate is in relation to its inheritance from the married daughter by her own children, or in default of children.

It seems to us a conclusive objection to the making of such a settlement as seems to have been contemplated by the testator, that it would be wholly useless and unnecessary as a protection to the property, or to the married woman's interest in it in her lifetime. The body of the estate being vested in her by force of the operative words of the devise, whether her estate be legal or equitable, it is taken by her, and is to be held and enjoyed according to the law of her domicil. And with regard to Mrs. Case's interest, it is of no importance whether the domicil be considered to be that of the testator or of her husband, as the laws concerning the property of married women are substantially the same in the State of Rhode Island and in the District of Columbia, where her domicil, and that of her husband, are described to be in the pleadings. See General Statutes of Rhode Island, 1872, pp. 329, 330, and U. S. Statutes at Large, vol. 16, p. 45, Act of April 10, 1869, regulating the rights of property of married women in the District of Columbia.

*Second.* It is not clear what trusts the testator intended should be declared in any future settlement, nor how they should be declared. We have already shown how imperfect, as well as useless, are the directions for the trusts in the lifetime of the married women. These directions are more vague and indefinite, as to what should be declared as the purposes of the trusts after their decease. In their lifetime the proposed trust relates to the income alone. The body of the estate is only spoken of with regard to the disposition of it after their decease. Here, as in other parts of the will, it is manifest that the testator did not take into consideration the possible contingencies, with regard to survivorship, among the members of his brother's family, and made his suggestions in regard to one state of events, which was, indeed, probable, but by no means certain. Thus, he does not take into consideration the contingency of the husband's surviving the wife, or of his brother's surviving any of his children. The latter is more remarkable, inasmuch as one of the brother's children deceased in the testator's lifetime. He seems, also, to have been ignorant of the effect of the statute law upon the interests given to his brother's children in either contingency.

The phrases used in the latter part of the twelfth section of the will being thus vague, indefinite, and imperfect, are not a sufficient declaration of an executory trust, either in the character of the trust to be declared, the estate which is to be the subject of it, or the persons to be benefited by it.

Thus far, we have considered the twelfth section as if the only operative words of devise were those with which it commences, and as if each and all of the succeeding clauses drew their vitality from these opening words. But the testator has added to the clauses which we have already been considering upon the view just stated the words, " *and I do hereby devise and bequeath the same accordingly.*" There has been suggested a theory for the reading of this section, by which the initial phrase of devise to Daniel Rogers in trust shall be considered as having spent its force in the first half, ending at the words, " *when this bequest takes effect ;* " and that by the use of this closing phrase containing also operative words of devise, the testator may have intended, in the language of some of the cases, " to become his own conveyancer," and by causing these words to cover the clauses which

speak of future trusts, to actually create and declare the trust he
had in his mind, in the language which he had already used, as a
guide for those who might be called upon to settle the terms of
the trust after his decease.   These words are added for some
purpose, and being operative words of devise, it is necessary to
consider their effect upon the preceding language.   It must be
conceded that the repetition of operative words of devise, after a
devise to a trustee, and a direction to him to divide the trust
estate at a future time, may have the effect of turning into a
present devise or vested interest that which might otherwise
have been future and contingent.   Williams on Executors, 5th
Am. ed. 1108.

Whether such words at the close of a paragraph will have the
effect to change that, which would otherwise have been an execu-
tory trust, into a trust executed, or to require a trustee to make a
settlement by way of executory trust, as near as he can to the
expressed desire of the testator, although the language in which
such will is expressed is not clear as to all contingencies, nor as
to the persons to be benefited in all contingencies, is now the
question.

The following are the English cases in which the law on this
subject of the testator's intent to create a trust is considered, and
by the later cases may be deemed settled in England: *Hart* v.
*Tribe*, 18 Beav. 216 ; *Conolly* v. *Farrell*, 8 Beav. 347 ; *Berkley*
v. *Swinburne*, 6 Sim. 603 ; *Brown* v. *Paull*, 1 Sim. N. S. 92 ;
*Barden* v. *Laing*, 14 Sim. 113 ; *Carman* v. *Hansen*, 10 Hare,
234 ; *Scott* v. *Key*, 35 Beav. 291 ; *Woods* v. *Woods*, 1 Myl. & C.
401 ; *Carr* v. *Loring*, 28 Beav. 647 ; *Camden* v. *Benson*, 8 Beav.
350 ; *Godfrey* v. *Godfrey*, 11 W. R. 554 ; *Markott* v. *Markott*,
L. R. 14 Eq. 49 ; *Webb* v. *Webb*, 9 Sim. 267 ; *Hanley* v. *Gil-
bert*, Jac. 354 ; *Wetherill* v. *Wilson*, 1 Keen, 80–86 ; *Crockett*
v. *Crockett*, 2 Phillips, 556 ; *Leach* v. *Leach*, 13 Sim. 304 ; *Lambe*
v. *Eames*, L. R. 10 Eq. 271 ; *Jubber* v. *Jubber*, 9 Sim. 503–507 ;
*Layman* v. *Elmer*, 2 Y. & C. C. C. 363 ; *Hadow* v. *Hadow*, 9
Sim. 438; *Byron* v. *Blackburn*, 26 Beav. 44 ; *Haman* v. *Weaver*,
1 Swans. 37, 38 ; *Jones* v. *Greatwood*, 16 Beav. 527 ; *Thorpe* v.
*Owen*, 2 Hare, 611 ; *Barden* v. *Whittemore*, 5 Sim. 32 ; *Brown*
v. *Casamajor*, 4 Ves. Jun. 498 ; *Bushnell* v. *Parsons*, Prec. Ch.
219 ; *Andrews* v. *Partington*, 2 Cox, 224.

As language expressive of a desire to create an executory trust, the latter part of this twelfth section can have no operation. These are mere precatory phrases, which the daughters of Daniel Rogers can give effect to if they choose, by will, in the happening of the particular contingencies indicated, but which neither they nor the court are obliged to adopt and carry into effect under all the contingencies that may happen to the family or the estate. The absolute gifts to the eight children of Daniel Rogers are not cut down to lesser estates by the clauses which follow the language of devise and bequest. As language of present devise, creating executed trusts, nothing is added to the trusts declared in the first half of the section.

The defect in the provision for any other trust than that actually created by the will, that is, the trusteeship of Daniel Rogers, is shown by what has actually happened in the case of Mrs. Williams. When the will was executed in 1862, Mrs. Williams was unmarried and childless, and the word " children," used in connection with any gift to her, must be construed as a word of limitation. *Wild's case*, 6 Rep. 17. Subsequent to the execution of the will she married the defendant, Jonas Williams, and died in less than two months after the testator, leaving an only child, the complainant, Maria B. R. Williams, a little girl now under ten years of age. The will says nothing about " trusteeing " the property of the children of either of the daughters, but limits what is said about a future trust to the shares which would fall to the daughters themselves on the final division by the trustee. Mrs. Williams's interest in the real estate would, of course, descend to her daughter. Her interest in the personal estate as a vested interest would be disposed of by the laws of New York (of which state her husband was a citizen), regulating the disposition of the personal property of married women. If any power is given to the original trustee to create a new trust, its exercise is contemplated only in the lifetime of a married niece, and it expires with her life. It is not to be exercised in the lifetime of Mrs. Rogers, the widow, and not till the final division of the residue of the testator's estate. In this interval, while the power, if any be given, remains dormant, the descent is cast, and all occasion for the exercise of such a power ceases. *Lancashire* v. *Lancashire*, 2 Phillips, 657.

Lord Romilly, M. R. (*In re Phene's Trusts*, L. R. 5 Eq. 546), speaks as follows concerning the exercise of powers like those we have been considering : " The case of *Brown* v. *Higgs*, 8 Ves. Jun. 561, shows that a testator may give to his executors an arbitrary power of determining to whom a fund may go, and that if he does so, this arbitrary discretion can be exercised only by the persons to whom it is given ; even the court cannot exercise it. The testator may also say that the discretion shall be exercised at a particular time ; and I think he does so here by fixing the time when the fund becomes divisible. Again, you must consider who are the objects of the discretion ; they must be persons in existence at the time when the discretion is exercised ; the discretion cannot be exercised for the benefit of a dead person."

Many of the decisions, both in England and in this country, consider a trust as executory if anything, even a formal conveyance, remains to be done by the trustee ; but this doctrine has been effectually extinguished in the cases just mentioned. Lord St. Leonards, in his opinion in *Egerton* v. *Earl Brownlow*, 4 H. L. 1, 204, has cleared up the English law upon this subject, and given us also most sensible rules of construction, as applied to the contingencies which a will is framed to provide for. He says (p. 217) : " You are not to look at the case as it stands at the moment you are deciding it, and pick out that particular case, and say, because this event has happened, such a construction is to be put upon it. The true mode of construing men's wills is this : Take the whole instrument, and ask what were the probable cases that might arise at the time the will was made, what were the probable events which were contemplated by the testator and provided for." And, with regard to trusts, he says (p. 210) : —

" All trusts are, in a sense, executory, because a trust cannot be executed except by conveyance, and therefore there is something always to be done. But that is not the sense which a court of equity puts upon the term ' executory trust.' A court of equity considers an executory trust as distinguished from a trust executing itself, and distinguishes the two in this manner : Has the testator been what is called, and very properly called, his own conveyancer ? Has he left it to the court to make out,

from general expressions, what his intention is? or has he so defined that intention that you have nothing to do but to take the limitations he has given to you and to convert them into legal estates?"

We have followed the opinion of this court in the case of *Tillinghast* v. *Coggeshall*, 7 R. I. 393, which is sustained by the decision of the House of Lords, in *Egerton* v. *Earl Brownlow*, 4 H. L. 1, 210, and by the decision of the Supreme Court of the United States in *Neves* v. *Scott*, 9 How. U. S. 211.

5. The devise to the eight children of Daniel Rogers is a devise to the children of Daniel Rogers as a class, and only those take who survive the testator. Each of the seven surviving children takes one seventh of the residuary estate.

Hitherto the construction of the will has been considered as if all the children of Daniel Rogers had survived Robert Rogers, the testator. The will provides for a division of the residuum among the eight children of Daniel Rogers. At the death of the testator there were but seven children of Daniel Rogers living, one, James S. Rogers, having died after the execution of the will, childless, unmarried, and intestate. When the will was executed, the testator included James among the objects of his bounty, for he used the words " eight children now living." He also contemplated the possibility of the decease of one or more of these children before his bequest should take effect, for he bestows the share of each child upon that child's legal heirs in case of the decease of any child in the interim referred to. It is to be observed that the phrase " through their father's blood " is not connected with the phrase "*per stirpes* and not *per capita*" added to the phrase " legal heirs."

The question arises who is entitled to the share that was intended for James? Did he ever have any heritable interest in the testator's property by virtue of this will, so that the persons who would be his " legal heirs " can be ascertained; and also so that the time when they are to be ascertained is definite, and would those persons take, if they take at all, by virtue of being his legal heirs, or as immediate devisees, or in other words, as purchasers?

That is, do the words " legal heirs " mean the person or persons who, at the decease of the testator, shall answer the descrip-

tion of the legal heirs of the deceased child, and can such person or persons take under the phrase as "*descriptio personarum?*" Or, has the gift to him lapsed, and if so, is it disposed of by the will? Or, has the testator bequeathed his property to the children of his brother as a class, and do those who are within that class take directly from the will to the exclusion of all others?

The correct view seems to us to be that the devise is to the brother's children as a class, and that those who answer the description of that class at the time when, in the language of the will, "the bequest takes effect," are entitled to the whole of the residuary estate as immediate devisees and legatees. The direction to the trustee to postpone the division till the death of the widow is, as we have seen (Point 1), merely a suspension of the enjoyment of the testator's bounty, not a suspension of the vesting of the estate bestowed. No estate for life or years is carved out of the residuary property; the trust merely stands as security for a life interest charged upon the specific property of the testator, more than ample to respond to the charge. The time when "the bequest takes effect" is therefore the date of the death of the testator, and the persons then living, answering the description of children of Daniel Rogers, are the devisees or legatees of the residuary estate of Robert Rogers under his will. It is not necessary to consider whether the word "children," as here first used in this twelfth section, would or would not include grandchildren, as seven out of the eight children were then in full life. The word "eight" in this view means no more than the word "all," as there were no more than eight children in all. Nor is it necessary to consider whether the use of the word "eight" would have excluded children born after the date of the execution of the will, as there have been no such children, and when the will was executed there was no probability of there being any such children. It is not necessary to consider whether, if James had left children living at the death of the testator, they would at the common law have taken his share *by substitution*, as no such case has arisen. It is clear that no other persons could take by substitution as his heirs.

The English cases in which the heirs of a deceased devisee have been held to take, by way of substitution, are cases in which the "heirs" were the lineal descendants of a devisee who

died after the testator.  *Doe* v. *Girdlestone*, 2 Sim. 295 ; *Price*
v. *Lockley*, 9 Beav. 180 ; *Leeming* v. *Sherratt*, 2 Hare, 23 ; *Git-tings* v. *McDermott*, 2 Myl. & K. 69 ; *Doody* v. *Higgins*, 9 Hare,
App. xxxii. ; *Jacobs* v. *Jacobs*, 16 Beav. 557 ; *In re Cranen*, 23
Beav. 333.  All of which illustrate the same principle.

But the distinction between these cases and the one at bar can-
not fail to be at once observed.  The principle on which they
rest is, that other parties are in express words *directed to be sub-stituted*, as in *Leeming* v. *Sherratt*, and the substitution must be
confined to those so directed to be substituted ; for, and this is
most important, by the language of the will, according to the
settled rules of construction, *no estate vested in the ancestor.*

It is clear that the testator did not intend that the words
" legal heirs " should be construed as " *descriptio personarum*,"
so that the persons answering the description of the legal heirs
of James at the death of the testator should take the share of
the residuary estate.  For he goes on to limit the effect of the
phrase " legal heirs " by the use of the words " *per stirpes*, and
not *per capita*."  It is clear that by the use of this phrase he
limits the persons who are to take, to the children either of a
child that may die before the time of distribution, or to the
other children of Daniel Rogers who may be living at the time
of distribution, or to the children of deceased children of Daniel
Rogers, whether their demise occurs before or after that of the
testator.  This phrase is not applicable to the father, Daniel
Rogers, as heir, and yet he was the legal heir of his son James
at the time of the decease of the testator.  Besides, the direction
to the trustee, Daniel Rogers, is to *divide* the estate among his
children or their legal heirs *per stirpes*, &c., and the use of this
language directing a division among others excludes the idea
that the testator ever intended that Daniel Rogers was ever to
take any part of this residuary estate by inheritance or other-
wise.  See the case of *De Beauvoir* v. *De Beauvoir*, 3 H. L. 527,
in which all the earlier cases as to the use of the word heirs as
*descriptio personarum* are considered.  *Chambers* v. *Taylor*, 2
Myl. & C. 376 ; *Forster* v. *Sierra*, 4 Ves. Jun. 476 ; *Gwynne* v.
*Muddock*, 14 Ves. Jun. 488 ; *Swain* v. *Burton*, 15 Ves. Jun. 365,
369, 370 ; *Mounsey* v. *Blamire*, 4 Russ. 384 ; *Vaux* v. *Hender-son*, 1 Jac. & W. 388, n.; *Holloway* v. *Holloway*, 5 Ves. Jun.

397 ; *Ware* v. *Rowland*, 2 Phillips, 635 ; *Evans* v. *Salt*, 6 Beav 266 ; *Gitting* v. *McDermott*, 2 Myl. & K. 69, 76 ; *Boydell* v. *Golightly*, 2 Myl. & K. 76 ; *Danvers* v. *Earl of Clarendon*, 1 Vern. 35 ; *Birtwhistle* v. *Vardill*, 2 Cl. & F. 571 ; 7 Cl. & F. 895 ; *Lechmere* v. *Earl of Carlisle*, 3 P. Wms. 213 ; *Cowley* v. *Hartstonge*, 1 Dow, 361 ; *Williamson* v. *Atty. Gen.* 10 Cl. & F. 1 ; *Cookson* v. *Cookson*, 12 Cl. & F. 121 ; *Wrightson* v. *Macaulay*, 4 Hare, 387 ; *Pleydell* v. *Pleydell*, 1 P. Wms. 748, 798 ; *Tetton* v. *Ashton*, 20 L. J. N. S. Ch. 53 ; *Waite* v. *Templer*, 2 Sim. 54.

It seems to us, therefore, clear that James took no heritable interest in the residuary estate under the will, and consequently that no one can claim through him, either as his actual heirs, or as answering the description of the class described as his legal heirs, but that the devise and bequest to him lapsed and became divisible with the residuum among the children of Daniel Rogers living at the death of the testator.

The case falls within the 1st, 2d, and 3d rules of construction given by Jarman on Wills, vol. 2, pp. 74, 75, 78, 79, and also the rule by which a number applied to children in the will may be corrected according to the fact, pp. 108, 111.

There is a class of cases which at first sight seems to militate against these views, but which, when examined, confirms them. *Lombard* v. *Boyden*, 5 Allen, 249, is a type of this class, in which a lapsed legacy was held to have not been included in the residuary clause, and the real estate of the lapsed share was adjudged to the heir-at-law and the personalty to the next of kin. But the ground of this decision was that the final devise, although residuary in form, was actually a specific devise of an aliquot share to each of four persons, and consequently neither could take more by the will than this aliquot share, and the lapsed share was consequently excluded from the division. The following cases were similarly decided, and for the same reason: *Craighead* v. *Given*, 10 S. & R. 351 ; *Bagwell* v. *Dry*, 1 P. Wms. 700 ; *Man* v. *Man*, 2 Strange, 905 ; *Easum* v. *Appleford*, 5 Myl. & C. 56 ; *Barber* v. *Barber*, 3 Ibid. 688.

This last case is referred to in Judge Metcalf's opinion, 14 Gray, 546, *Jackson, Executor*, v. *Roberts*. See also *Atty. Gen.* v. *Johnson*, Ambler, 577, 580 ; *Cambridge* v. *Rous*, 8 Ves. Jun.

12; *Page* v. *Page*, 2 P. Wms. 489; *Owen* v. *Owen*, 1 Atk. 494; *Knight* v. *Gould*, 2 Myl. & K. 295.

6. The devise of the residue carries the income of the residue. It is to be observed that, in the direct devise to the trustee for the benefit of his children, there is no mention made of the income of the estate in his hands before the period of final distribution of the residuum. But the devise of a residue carries the income, the immediate produce of such residue. 2 Jarman on Wills, 85. The distribution of this income is not postponed, and, therefore, becomes immediately divisible to the parties entitled, the children of the trustee living at the decease of the testator. 2 Redfield on Wills, 107; *Hopkins* v. *Hopkins*, Cas. Temp. Talbot, 44; *Harris* v. *Lloyd*, 1 Turn. & Russ. 310; *Wrey* v. *Smith*, 14 Sim. 202; *Vaughn* v. *Buck*, 1 Phillips, 78; *Shepherd* v. *Ingram*, Amb. 448. In the next clause, however, there is a direct bequest of the income, through a trust which we have shown to be superfluous. The residuary devisees are, therefore, entitled to the present enjoyment of the income of the residuary property. See *Corneck* v. *Wadman*, L. R. 7 Eq. 80.

It is also to be observed that there are no directions for the investment and accumulation of the income by the trustee. The intent of the testator therefore is clear, that the objects of his bounty should at once enjoy the benefits of it.

7. As to the shares of the testator's nieces.

*a. The share of Mrs. Williams.* If our previous positions have been correctly taken, the share of Mrs. Williams became absolutely vested in her upon the decease of the testator, and she was also entitled to her share of the income of the residuum from the death of the testator to her own decease. By the laws of Rhode Island, her husband would have been entitled to administration upon the whole of the personalty, including the income, without account. But by the laws of New York, of which state he was a resident and a citizen, he is entitled to administer, but to retain no more of his wife's personal estate, after the payment of her debts, she leaving descendants, than she would have been entitled to claim and receive of her husband's personal estate, he dying intestate, under like circumstances. This would give him one third of her personal estate, while the remainder would be inherited by her daughter, the complainant, Maria B. R. Williams.

*b. As to the share of Mrs. Case.* As this is a suit for the recovery of property accruing to a wife by devise, after marriage, to which the husband is a necessary party, either as complainant or defendant, it clearly falls within the class of cases in which the Court of Equity, whose aid is invoked, may interpose and decree a settlement of the property, for the benefit of the wife and her children, under that special head of equity jurisprudence which protects " the wife's equity." But this also is a creature of a Court of Equity, and was called into existence to secure to the wife the protection which she could not receive at the common law. It always was a purely personal right of the wife, which she could claim or waive at her pleasure. 2 Story Eq. Jur. §§ 1408–20. But the statute law has now given her greater protection for her property than was ever granted to her by the decrees of an Equity Court. There is no necessity in this case for the exercise of this special power of the court, unless it is personally invoked by the wife. She has, by her next friend, prayed that her share of the property might be conveyed directly to her, and she has not authorized any counsel to represent her individually, and to request the court to decree a settlement, in trust, for her benefit.

In some cases of special delicacy the court has directed interrogatories to be framed to the wife, to ascertain her personal wishes with regard to a settlement, and for greater caution, that course might be taken in this cause. But it is obvious that no greater security could be derived from a settlement in trust than that which is now afforded by the statute law, so far as the rights of the wife are concerned. The children of the marriage might be better provided for in such a settlement, in the case of the husband's surviving the wife. But the children are not before the court, and cannot be brought here during the lifetime of their mother, and their right to such protection depends entirely upon her, and can be granted only at her request, and through her. The inference is, that, in her judgment, they require no such protection.

8. Of the fourth section of the will. The children of Daniel Rogers, living at the death of the testator, took vested interests in the fund, out of which the annuities, provided for in this section, are to be paid, and they should be declared so entitled.

*James Tillinghast*, for the respondent Maria D'W. Rogers.

The chief question submitted in behalf of Mrs. Rogers arises under the twelfth clause of the will, viz. : —

To whom does the one eighth part of the estate, here given to James S. Rogers, pass, he having died intestate and without issue after the will was made, but in the life of the testator ?

It is submitted that it *lapsed* and became intestate.

I. The gifts of the remainder, in this clause, to the children of Daniel Rogers, are gifts to *each* in *severalty*, and not to them as a class, and consequently James's share, in the event that has happened, lapsed, and is to be distributed as intestate estate.

" The rule is general, that where a money legacy or *a residue* is given to more persons than one by *any mode of expression which denotes a severance*, the legatees will be tenants in common ; and if the gifts be to them as tenants in common, the share of one who dies in the life of the testator will not go to the survivors, but will pass to the next of kin, under the statute of distributions." *Lombard* v. *Boyden*, 5 Allen, 251. See also *Bagwell* v. *Dry*, 1 P. Wms. 700 ; *Owen* v. *Owen*, 1 Atkyns, 494 ; *Man* v. *Man*, 2 Strange, 905 ; *Sherer* v. *Bishop*, 3 Brown C. C. 54 ; *Ellis* v. *Ellis*, 2 Desau. 556. Compare *Stirling's Ex'r* v. *Price*, 16 Ohio St. 29.

So, in *Re Estate of Mary E. Chapeau*, 1 Tucker, Surrogate Court (N. Y.) Reports, 410, the gift was to " the five children of C., to be equally divided, share and share alike."

. And, says the surrogate, " The naming five as the number of the children is, in my judgment, inconsistent with their being regarded as a class, and is equivalent to naming them individually.

" And again, special provision is made in regard to such as were daughters, namely, that they should hold their shares separately, notwithstanding any present or future coverture. All these provisions seem inconsistent with the idea of their taking as a class, but seem to look to their taking their shares individually."

To the same effect are: *Morse* v. *Mason*, 11 Allen, 36 ; *Re Ham's Trust, ex parte Biles*, 2 Sim. N. S. 106 ; *Havergal* v. *Harrison*, 7 Beav. 49 ; *Bain* v. *Lescher*, 11 Sim. 397 ; *Ackerman* v. *Burrow*, 3 V. & B. 54 ; *Frazier* v. *Frazier*, 2 Leigh, 642 ; *Nelson*

v. *Moore,* 1 Iredell Eq. 31 ; *Starling's Ex'rs* v. *Price,* 16 Ohio St. 29 ; *Kiel* v. *Nase,* 1 Ashm. 242.

And it matters not that the possession or enjoyment is postponed if the objects are ascertained. *Ballard* v. *Ballard,* 18 Pick. 41.

On the other hand, if the gift is to a class to be ascertained at any time subsequent to the date of the will, whether such subsequent time be fixed by the will itself or left indefinite, and therefore to be fixed by construction, it shows that the testator had no *particular individuals* in mind at the time, but *the class only,* and there will therefore then be no lapse if any one of the class survives to take. This is the usual case of a gift to children generally, without more, or to a specified number, different from the true number, which, as we have seen, has, *ex necessitate,* to prevent a failure of the gift from uncertainty, received the same construction. The testator has in mind all the children as a class, not the individuals who compose it.

This distinction, it is believed, will be found to run through all the cases, and to reconcile many which, on a cursory examination, are apparently conflicting.

The case apparently at first reading most in conflict with this view is that of *Leigh* v. *Leigh,* 17 Beav. 605, where, under a bequest to A. B. for life, and after his death " to *all the present born children* of A. B. equally," it was held that the gift was to a class, and that therefore the share of one of the children who died in the testator's lifetime did not lapse. But there, it is to be observed, the number of the children was not named, nor any language used pointing to the individuals, — for example, distinguishing between the sons and the daughters, — but simply a reference to *all* the present born children generally. Clearly, therefore, the case is not at all analogous to the case at bar, even if it be not so far in conflict with many other cases as to render its authority very doubtful.

And this principle it is submitted is decisive of the case at bar. The language of the twelfth clause is very precise. There is no indication here that the testator had in mind a class liable to fluctuation ; directly the contrary, for he directs the trustee, at the death of his wife, " *to divide* all the remainder of the property *equally between his eight children now living.*" More spe-

cific language of severance could scarcely have been used ; for he
not only identifies them as the eight now living, but directs that
the property be equally divided between them, — language of it-
self indicating a severance.

"Equally to be divided goes to the quality of the estate and
not to its limitations. *The words create a tenancy in common.*"
*Jackson* v. *Laquere*, 5 Cow. 221. See also Lord Hardwicke, in
*Lowther* v. *Condon*, 2 Atk. 130 ; Lord Langdale, in *Smith* v.
*Oliver*, 11 Beav. 494 ; Brayton, C. J., in *Tillinghast* v. *D' Wolf*,
8 R. I. 74.

II. We have thus far considered the case entirely indepen-
dently of the language following the gift to the eight children,
contained in this twelfth clause, viz. : "*or their legal heirs, per
stirpes and not per capita,* if any of them be dead when this
bequest takes effect ; and to trustee all or any part of the prop-
erty *so divided* among his eight children *or their heirs-at-law
through his blood,* by placing it safely in the hands of two or
more honest and competent persons, to hold and pay the income
thereof to his eight children, *or their heirs-at-law through his
blood, per stirpes* and *not per capita,* as it is received," &c., for
it is evident that whatever construction can be put upon this
language it cannot by any possibility aid the complainants.

But it is now necessary to examine it to see if it furnishes any
reason to prevent the lapse of James's share.

*a.* It is submitted the case upon this point is upon all fours
with *Staples* v. *D' Wolf*, 8 R. I. 74. The words were not in-
tended to create substituted legacies, and of course, therefore,
do not prevent the lapse.

*b.* But if they shall receive a different construction, we start with
the settled principle that there must be both an *expressed* inten-
tion to prevent a lapse, and also another legatee nominated, an-
other valid substituted gift or gift over, otherwise the heirs-at-law
and next of kin are not to be excluded. *Sibley* v. *Cooke*, 3 Atk.
573 ; *Bourne* v. *Hope*, L. R. 14 Eq. 343 ; 2 Redf. on Wills, 491,
§ 7.

That the testator even knew at the time he made his will that
the legatee had deceased, will not prevent the lapse. *Maybank*
v. *Brooks*, 1 Bro. Ch. 84 ; *Sword* v. *Adams*, 3 Yeates, 44 ; *Com-
fort* v. *Mather*, 2 Watts & Serg. 450 ; *Williams* v. *Neff*, 52 Pa.
St. 326.

*First.* In the case at bar there is no clearly expressed intention to prevent a lapse. It has been laid down by high authority in unqualified terms, that " it is not supposed to be in the view of the testator that legatees will die in his lifetime, nor does he provide for that accident. And this is the reason it is called a lapsed legacy, because the testator had it not in view at the time of the will." Lord Hardwicke, in *Ulrich* v. *Litchfield*, 2 Atk. 375, 376. See *Cotton* v. *Cotton*, 2 Beav. 67 ; *King* v. *Cleveland*, 26 Beav. 167, 168 ; and, on appeal, 4 De Gex & J. 483, and cases cited.

*Second.* However this may be, there is here no valid substituted gift that can take effect in the event which has happened.

The testator immediately defines what he means by *legal heirs*, by what immediately follows, " and to trustee all or any part of the property *so divided among his eight children, or their heirs-at-law through his blood ;* that is, the " legal heirs " in the preceding line are here defined to be the heirs-at-law *through his —* that is, *Daniel Rogers's*, the *trustee's — own blood.* Now, as Daniel Rogers himself is to make the division, in the contemplation of the testator, it is evident that the testator could not have meant to include him among the heirs-at-law *through* (not *of*, it will be observed) his (own) blood ; and as he himself would be strictly the heir of any one of his children who died in his lifetime without issue, no other possible construction can be put upon the term " legal heirs," as here used, but to construe it as *children ;* so that the whole gift would read thus : " equally between his eight children now living, or their children *per stirpes* and not *per capita*, if any of them be dead *when this bequest takes effect ;* " thus, also, giving force and meaning to the terms " *per stirpes* and not *per capita ;* " that is, the children of his nephews or nieces collectively are to take the parent's share by representation, *per stirpes*, and not equally with the others, *per capita.* Indeed, these words, " *per stirpes*," necessitate this construction ; each deceased nephew or niece must be the *stirps* through whom the substituted legatees must trace. As said by Lord Langdale, in *Dick* v. *Lacy*, 8 Beav. 214, *per stirpes* " *means distribution of some sort or other,*" and " *not only imports distribution but also imports succession, or some sort of succession.*" It is plain, in this case, that Daniel Rogers cannot, in any sense,

trace through his children, " *per stirpes,*" much less answer the description of heir of his children *through* his own blood.

Other parts of the will indicate that by " *legal heirs* " the testator meant children. Thus, in the fourth clause, the surplus income is to be divided by the executors (Daniel Rogers himself being one) " equally among the children of my brother, Daniel Rogers, or *their legal heirs-at-law,* until the decease of the said Charlotte D'Wolf, and that after that event, the said stocks be equally divided among the children of my brother, Daniel Rogers, *or their legal heirs-at-law, or held in trust by my said brother,* with power of naming substitutes at his option, and I do bequeath the same accordingly."

And in the seventh clause, " But in case said Robert Rogers Howard dies without lawful issue, then all said stocks are to be divided equally among the children of my brother, Daniel Rogers, *now living, and their legal heirs through their father's blood, per stirpes* and not *per capita,* and I do give and bequeath the same accordingly."

That the word " heirs " may be so construed when the context or evident intention requires it : See *Bond's Appeal,* 31 Conn. 183 ; *Bowers* v. *Porter,* 4 Pick. 198 ; *Morton* v. *Barrett,* 22 Me. 257 ; *King* v. *Beck,* 15 Ohio, 559 ; *Braden* v. *Cannon,* 1 Grant's Cases, 60 ; *Ellis* v. *Essex Bridge,* 2 Pick. 243 ; *Heard* v. *Horton,* 1 Denio, 165 ; *Vannorsdale* v. *Van Deventer,* 51 Barb. S. C. 137.

If this be so, it is evident that it matters not to what period the substituted gift is referred, in the event that has happened. For James left no child, that is, no " legal heir " in the sense of the will, and the substituted gift itself therefore equally fails with the original gift.

III. And, if these are held to be substituted gifts, this brings us to the question, whether the proper construction of this twelfth clause, as also of the fourth clause, does not require that the vesting of the gifts in remainder be postponed till the death of Mrs. Rogers ; or rather, which for the purposes of this bill comes to the same thing, that, if technically vested, they are so only contingently, subject to be divested in favor of the children as purchasers, in case of intermediate decease, and therefore cannot be now distributed. *Hervey* v. *McLoughlin,* 1 Price, 264 ; *Doe* v. *Girdlestone,* 2 Sim. 225 ; *Salisbury* v. *Petty,* 3 Hare, 86 ; *Price*

v. *Lockley*, 6 Beav. 180 ; *Burrell* v. *Baskerfield*, 11 Beav. 525 ; *Edwards* v. *Edwards*, 15 Beav. 364 ; *Jacobs* v. *Jacobs*, 16 Beav. 557 ; *In re Philps Will*, L. R. 7 Eq. 151 ; *Finlason* v. *Tatlock*, L. R. 9 Eq. 258 ; *Anderson* v. *Smoot*, 1 Spear Eq. 312 ; *Heyward* v. *Heyward*, 7 Rich. Eq. 289 ; *Richardson* v. *Wheatland*, 7 Met. 169 ; *Hunt* v. *Hall*, 37 Me. 363.

Unless, indeed, in the mean time the event happens which fixes the final vesting of the gift beyond further question, as would seem to be the case here as to the share of Mrs. Williams ; for it seems settled that the substituted legatees are to be ascertained at the decease of the primary legatee, where such decease occurs after that of the testator, and before the period of distribution. *In re Philps Will*, L. R. 7 Eq. 151; *Hobgen* v. *Neale*, L. R. 11 Eq. 48.

If it be said, that to hold the gifts to vest at the death of Mrs. Rogers would cause the lapse of the share of any one of the nephews or nieces who may die in Mrs. Rogers's lifetime without issue, it may well be conceived that, if the testator contemplated the contingency at all, he would have preferred and intended this result rather than the other — that he would much more likely prefer that his widow or his brother should share in his property than that an entire stranger both in blood and in fact, like an unknown and future husband or wife of either of his nieces or nephews, should do so to the exclusion even of their children.

And cases of a direct gift in remainder *without any substituted gift* — of which *Poor* v. *Considine*, 6 Wall. 458, is one of the most recent and striking examples — throw no light whatever upon this question. Had there been in that case a substituted gift in case of the decease of Mary Jane Barr, pending the life estates of her father or mother, can it be doubted that a different construction must have prevailed ? Such was also the case of *Staples* v. *D'Wolf*, 8 R. I. 74. The court there found, in view of other portions of the will relating to the same bequests, that the testator by the particular clause in question could not have intended to create a substituted legacy, pp. 122, 123. And in this connection it is not to be overlooked that the only gift here in remainder is in the *direction to divide*, which of itself fixes the vesting at the time of distribution. For it is submitted that to

connect the concluding words of gift in this clause with this dis-
tribution is to force them out of their natural, as well as out of
their actual connection, where they are evidently used to give
effect to the power of appointment of new trustees of the daugh-
ters' shares conferred upon Daniel Rogers.

IV.  But one other question remains to be considered,— James's
one eighth of the estate at least, if not the other sons' five eighths,
having lapsed and become intestate, to whom is it to be distrib-
uted ?   For whether or not the other shares can be now divided
out and the trusts respecting them now determined, it is evident
that no such question arises as to these shares if regarded as in-
testate.   The bill as to them, all parties interested being before
the court, becomes an ordinary administration bill.

To whom then do these shares pass ?  Aside from the provision
in the fourth clause of the will made for the widow, " in lieu of
all claims of dower on any part of my estate," the answer is sim-
ple :  the real estate to the testator's brother, Daniel Rogers, as
sole heir-at-law — subject to the widow's dower ; and the per-
sonal estate equally to the brother and to the widow, one half to
each — as next of kin and distributees under the statute.

Nor does the provision in the will *in lieu of dower* at all change
this.   True, Jarman, Vol. I. p. *407, and Redfield, Vol. II. pp.
747, 748, both state that in such case the widow cannot claim
dower in the intestate real estate, as the provision is, they say,
for the benefit of the estate.   But neither cites a case adjudicat-
ing the question.   Redfield cites Jarman, and Jarman only cites
*Pickering* v. *Lord Stamford*, 3 Ves. Jun. 332, in which the Mas-
ter of the Rolls (Lord Alvanley) merely expresses himself doubt-
fully upon this point.   But it is submitted that the testator in
disposing, as he supposes, of his whole estate, makes the provi-
sion in favor not of the estate as such, but of the other devisees
under his will.   And it is these only he has in his mind, and it is
against these only that the widow is put to her election.   The
very doctrine of lapse rests upon the entire absence of intention
on the part of the testator as to the lapsed portions of his estate.
To say, therefore, that the provisions in the will in lieu of dower
apply to these portions, when no other portions of the will do, is
to force language to infer an intent where none is expressed ; in
effect to make a partial will upon a matter where otherwise,

and as to the *corpus* of such portions of the estate itself, the testator confessedly is entirely silent. Had the testator made ample provision for his widow, but not expressed to be in lieu of dower, it would not as a general principle be intended that he meant to exclude her dower or put her to her election, but she would, even as against the devisee, take her dower in addition. Shall it, on the other hand, be intended that he meant to exclude her dower *in favor of the heir* in a part of his estate, which, in the contingency that has happened, he has left entirely undisposed of? To do so would be to reverse the usual rule and to discriminate against the widow in favor of the heir.

But however this may be as to the real estate, it is entirely settled that it is not so as to the personal. The widow is entitled to her half of this absolutely, and would be, even had the provision in the will been expressed to be " in lieu of dower and thirds." *Pickering* v. *Lord Stamford,* 3 Ves. Jun. 333 ; also affirmed, 3 Ves. Jun. 492 ; *Colleton* v. *Garth,* 6 Sim. 19 ; *Johnson* v. *Johnson,* 4 Beav. 318.

*B. B. Hammond,* for the respondent, Daniel Rogers, protesting that Mr. Rogers made no claim antagonistic to the complainants, submitted, in opposition to the claim made by Maria D'W. Rogers of an intestacy as to a portion of the estate, —

I. The intention of the testator, if ascertainable from the four corners of the will, is to govern.

The testator, by the twelfth clause, intended to keep the property in Daniel Rogers's family.

II. If Daniel Rogers's children do not take as a class, then it is submitted that James S. Rogers's share did not lapse, but went to his father Daniel Rogers, as a substituted legatee. *In re Porter's Trust,* 4 K. & J. 188.

III. The general intent overrides all mere technical and grammatical rules of construction. 1 Redfield on Wills, 3d ed. 433 ; *Parks* v. *Parks,* 9 Paige, 116 ; *De Kay* v. *Irving,* 5 Denio, 646.

If, as is claimed, the anxious intent and solicitous desire of the testator was to confine his property to his brother's family, and one can scarcely fail to draw the conclusion from the will that Daniel Rogers's children, be they one or be they many, *were* to take his estate, that intent would be best carried out by his children taking as a class, the lineal descendants of deceased children

taking their parents' share under the statute; for whether a legal or an equitable estate is given to the ancestor, the lineal descendant will take under the statute. *Paine* v. *Prentiss*, 5 Met. 396.

*Arnold Green*, for the respondent Jonas Williams, claimed that Mr. Williams was entitled to administer on so much of the interest of his late wife, in the residue of Robert Rogers's estate, as is personalty, and to hold as tenant by the curtesy so much thereof as is realty.

The shares of the surviving children of Daniel Rogers became vested on the death of the testator. 1 Jarman on Wills, 768; *Booth* v. *Booth*, 4 Ves. Jun. 399; 1 Roper on Legacies, 387, 388; *Doe, Lessee of Poor* v. *Considine*, 6 Wall. 479; *Croxall* v. *Shererd*, 5 Wall. 268; *Staples & Pearce, Trustees*, v. *D'Wolf et als.* 8 R. I. 74, 81–90, 123, 124.

*Providence, June* 8, 1874. DURFEE, J. The principal object of this suit is to procure from the court a construction of the twelfth clause of the will of the late Robert Rogers, and, if the construction given will admit of it, a decree directing an immediate division of the property devised and bequeathed by the twelfth clause among the persons beneficially entitled to it.

By the fourth clause of the will the testator gives his wife for life, and in lieu of dower, the income of certain stocks, which are nominally of the value of $77,900, but really of a much greater value; after her death he gives her sister an annuity of $1,500 out of the income of the stocks, and the residue of the income, during the life of the annuitant, to his brother Daniel's children, or their heirs-at-law, and, after his wife and sister are both dead, he directs that " the said stocks be equally divided among the children of my brother Daniel Rogers, or their legal heirs-at-law, or held in trust by my said brother, with power of naming substitutes at his option, and I do bequeath the same accordingly."

The twelfth clause is as follows : " *Twelfthly.* I do hereby give bequeath and devise to my brother Daniel Rogers in trust with power to name and appoint a successor or successors all the residue and remainder of my estate real personal and mixed not herein otherwise bequeathed and devised to have and to hold the same for the following purposes viz. In the first place and before any other claims on this fund are satisfied to pay any deficiency each and every year it occurs on the three thousand dollars per

year given to my wife Maria Rogers under the fourth bequest of this will. In the second place to divide all the remainder of the property hereby devised and bequeathed after the decease of my wife Maria Rogers and before his own decease (if he so chooses to do) equally between his eight children now living or their legal heirs *per stirpes* and not *per capita* if any of them be dead when this bequest takes effect and to trustee all or any part of the property so divided among his eight children or their heirs-at-law through his blood by placing it safely in the hands of two or more honest and competent persons to hold and pay the income thereof to his eight children or their heirs-at-law through his blood *per stirpes* and not *per capita* as it is received and that part of it which may belong to his daughters married or single to be so trusteed as that the income thereof shall be paid to them or either of them on their own receipt and after the same shall have accrued and without the intervention of any creditor or husband and all the property so trusteed on the said daughters' decease to descend to their own children or in default thereof to their heirs-at-law through their father's blood *per stirpes* and not *per capita* and I do hereby devise and bequeath the same accordingly."

Robert Rogers died in 1870. His widow is seventy-eight years old. Her income under the fourth clause has not been less than $6,000 per annum, and is not likely ever to fall short of $3,000 per annum. She is offered ample security against loss in case it should happen to fall short of that amount. She has no wish to have the trusts of the twelfth clause kept alive for her benefit. It therefore seems unnecessary to await her decease before dividing the property bequeathed by that clause if it can be previously divided without prejudice or the possibility of prejudice to the right of any other person.

Very clearly the division cannot be now made with a certainty that no other person will be prejudiced by it, unless the estates and interests created by the twelfth clause are vested; for if they are contingent, it cannot be known with certainty, until the happening of the contingency, who are the persons who will be entitled to share in the division. Are they vested ? It is argued that they are, and that the provision of the twelfth clause, which postpones the time of division, does not postpone the vesting until the

division, but simply postpones until then the full enjoyment of the property. We will consider first whether this is the correct construction of the twelfth clause.

The cardinal rule, in this as in other points of construction, is that the intention of the testator must govern if it can be ascertained. But the law favors vesting, and, if the intention be doubtful, a legacy will, if possible, be held to be vested rather than contingent. Mr. Redfield, in his Treatise on the Law of Wills (vol. 2, p. 627), says the more recent English cases establish the proposition " that no estate will be held contingent unless very decisive terms of contingency are used in the will, or it is necessary to hold the same contingent to carry out the other provisions and implications of the will."

The questions then are, Did the testator intend, or has he used language clearly denoting contingency ? or, Does the will contain any provision or implication which requires that the estates shall be contingent ? If not, then the estates are to be construed as vested.

The leading purpose of the twelfth clause is to provide for a division of the residue of the testator's estate among the children of his brother Daniel, or, in case of the decease of any of them before the taking effect of the bequest, among the children then living, and the heirs-at-law, so called, through the brother's blood, of the children then deceased. The testator seeks to effect this purpose through the medium of a trust, which is also first to serve another purpose, namely, the guaranteeing to his wife an income of not less than $3,000 per annum. And apparently in view of this contingent trust in favor of his wife, the division is deferred until the decease of his wife. But beyond this he appears to have wished that his brother Daniel should have a certain control over the property, for the purpose of securing it the more exclusively to his children and their descendants. He therefore gives him a twofold discretion : first, to postpone the division during his own life ; and, second, to trustee all or any part of the property when divided, so trusteeing the shares of the daughters as to protect it from husbands and creditors and secure its descent, after the decease of the daughters, to their own children or heirs-at-law through the father's blood.

There are three features of the twelfth clause which deserve

special consideration : first, the delay in the division; second, the fact that the persons who are to share in the division are to be determined by reference to the time " when the bequest takes effect ; " and third, the powers which are conferred upon Daniel Rogers, in making the division, to trustee the property divided.

1. Is the fact that the division was not designed by the testator to be made until after the death of his wife, a fact from which we ought to infer that the devise or bequest was intended to be contingent until her death ?  The bequest is a bequest of the residue to Daniel Rogers in trust, to divide it among his children, &c., after the decease of the widow and before his own decease if he chooses.  If it had been a bequest to him in trust for his children, &c., to be divided among them after the decease of the widow, there is no doubt upon the authorities that it would be construed as conferring vested interests, in the absence of other language importing a different intent.  The bequest, where such language is used, is present and absolute ; the division only is suspended until a future time.  Is the language which has been used to be construed in the same way ?  It has been held that, where the bequest is made in the form of a direction to pay or divide at a future time, the vesting will be postponed till then, for the reason that, inasmuch as the bequest consists in the direction to pay at a future time, it is in effect a bequest *at* that time, not an immediate bequest.  The case at bar appears, at first blush, to fall within this rule.  But this rule was designed to be used simply as a key to the intention, and will not be applied to contravene the intention of the testator, when it is otherwise disclosed.  Thus the rule is not applied where the direction to pay at a future time is coupled with a direction to pay interest in the mean time.  The testator, by allowing the legatee to have the interest, is supposed to recognize him as the owner of the principal.  In *Leeming* v. *Sherratt*, 2 Hare, 14, the rule is considered by Vice-Chancellor Wigram, and the limited effect which it is entitled to have, as a rule of construction, is luminously explained.  If the future time is fixed not for the purpose of making the legacy dependent on its arrival, but simply to defer the day of payment, then the legacy vests immediately, to be paid or delivered when the time arrives.  And in order to ascer-

tain in what view the future time is appointed, we are not to confine our attention to any single point, or any isolated expression, but to seek the intention of the testator from the four corners of his will.

In *In re Bartholomew*, 1 Mac. & G. 354, the bequest was in the form of a direction to pay £2,000 to the children of the testator's daughter after her decease, as and when they should severally attain the age of twenty-one years, and closed with the words "to whom I give and bequeath the same accordingly." Lord Cottenham and Sir Lancelot Shadwell held that the legacies were vested, upon the ground that there was a gift to the legatees, independently of the direction to pay, in the words, "to whom I give and bequeath the same accordingly." In *Locke* v. *Lamb*, L. R. 4 Eq. 372, 380, however, Malins. V. C., while he confesses that he should feel bound by this decision, says he cannot see the distinction which Lord Cottenham drew from the words "to whom," &c., and that to him the words appear to be a mere redundancy. In the case at bar the twelfth clause closes with the words, "and I do hereby devise and bequeath the same accordingly." The words have been pressed on our attention, and doubtless are not to be overlooked in view of the opinion of Lord Cottenham, though we do not clearly perceive that they do more than express what would be implied without them.

The bequest under consideration is residuary, and, in some cases of doubt, the fact that the bequest was residuary has been deemed a reason for construing it to be vested. *Staples & Pearce* v. *D' Wolf*, 8 R. I. 74, 120 ; *Jones* v. *Mackilwain*, 1 Russ. 220 ; *Booth* v. *Booth*, 4 Ves. Jun. 400 ; *Leake* v. *Robinson*, 2 Mer. 363, 386 ; *Lee* v. *Busk*, 14 Beav. 459.

So when the delay is for the sake of some object independent of the legacy, it is not considered incompatible with the vesting of the legacy. In *Packham* v. *Gregory*, 4 Hare, 396, where the bequest was in the form of a direction to pay and divide within six months after the death of the person beneficially entitled for life, the interests were held to have vested. "The time," it was said, "was allowed for the discretion of the trustees and the convenience of the estate, and for those purposes only." And in that case, Wigram, V. C., remarks, that if, upon the whole will, it appears that the future gift is only postponed to let in some

other interest or for the benefit of the estate, the delay does not suspend the vesting, but only postpones the enjoyment. In the case at bar the division is delayed apparently for the security of the widow, and not with a view to make the gift conditional upon the arrival of the time for the division. It is true the division may be delayed, in the discretion of the trustee, even after the death of the widow; but evidently the testator intended by this no more than by the provision for a new trust, namely, not contingency, but the more effectual promotion of the purposes of the bequest. And see *Poor* v. *Considine*, 6 Wall. 458 ; *Eldridge* v. *Eldridge*, 9 Cush. 516. When it is in doubt, says Chief Justice Shaw, in the case last cited, whether the words of contingency or condition apply to the gift itself, or to the time of payment, courts are inclined to construe them rather as applying to the time of payment, and to hold the gift rather as vested than contingent.

The first purpose to be served by the trust created by the twelfth clause is thus expressed : " In the first place, and *before any other claims on this fund are satisfied*, to pay any deficiency *each* and *every year* it occurs on the three thousand dollars per year given to my wife, Maria Rogers, under the fourth bequest of this will." The language imports that the testator supposed that the trust fund would be subject *each and every year* to claims other than the contingent claim of his wife, and that he for that reason gives her claim a priority. But no other person has any claim upon the trust fund during the life of the wife, unless by implication or inference from this and other expressions in the will, the other beneficiaries of the trust are to have the income of the fund ; and if they are to have the income, the fact that they are to have it favors, if it does not necessitate, the construction that they take vested interests in the fund previous to the division.

Again, in the provision for dividing and trusteeing the residue, the testator uses the expression, " that part of it which may belong to his daughters," as if he recognized an ownership in them. The indication, however, is slight and equivocal, for he is speaking with reference to the time of division, when they would become owners, if they were not such already.

If we look beyond the twelfth clause to other parts of the will, we find nothing to favor the supposition that the testator

intended to exclude the persons designated to take under the twelfth clause from any benefit from the bounty there bestowed until such time after the death of his wife as the trustee might choose to divide it, or to make their right of property in it dependent upon their surviving that time. On the contrary, it does appear, that after his wife, they were the principal objects of his testamentary beneficence, and, they being of age and some of them quite advanced in years, he had no reason except the security of his wife for delaying the time when they should reap the benefit of it. The thirteenth clause gives to executors and trustees power to sell and reinvest the property, but not without " the assent of the party enjoying the income thereof." This language should be considered in connection with the opening direction of the twelfth clause to which we have just referred. The will contains no traces of a wish to aggrandize a property which was already ample, by mere accumulation, until the division ; and the inference is easily drawn that the testator supposed that the income, instead of accumulating, would be enjoyed by the objects of his bounty. Indeed, he probably had the idea that a trust ordinarily means an arrangement by which the trustee safely keeps the *corpus* of the property, while the beneficiaries enjoy its income.

The conclusion to which we are led by the authorities to which we have referred, and by our own reasoning upon the will, is, that the fact that the division of the property devised and bequeathed by the twelfth clause is delayed until after the death of the widow, is not a fact from which we are to infer that the devise or bequest was intended to be contingent until her death.

2. The twelfth clause directs that the division, when made, shall be made among the children of the trustee or their legal heirs, &c., " if any of them be dead when this bequest takes effect." An important question to determine is, what time is signified by the words " when this bequest takes effect." Does it mean when the widow dies, and when the division shall be made ? If so, until then the persons designated cannot be known and their interests cannot vest, or not indefeasibly at least. The obvious answer to the question is, that the bequest takes effect when the will takes effect. But is this what the testator meant ? We are not entirely sure ; but we find nothing in the words or

their context to convince us that he did not mean this; and we must therefore take the obvious meaning of the words as the meaning in which the testator employed them. This view relieves the bequest of any uncertainty in regard to the persons who are to have the benefit of it, in so far as any uncertainty arises from the words under review, and, inasmuch as the persons can be ascertained at the death of the testator, is entirely consistent with their taking vested interests. Indeed it favors that construction.

3. Another feature of the twelfth clause which we have reserved for special consideration is the power which is given to the trustee, in making the division, to trustee all or any part of the property when divided. In view of this power can we construe the beneficial interests as vested?

We have spoken of the power as a discretion, and in so far as it relates to the shares of the sons it is clearly a discretion. The words first used are, " to trustee *all or any part* of the property so divided among his eight children or their heirs-at-law," &c. A trust to trustee all or any part of the property is purely discretionary, for, as is urged by counsel, a power to trustee any part may be satisfied by its exercise upon an infinitesimal part, and, consequently, by not being exercised at all. *Bailey* v. *Burges,* 10 R. I. 422. But the words first used are followed by words relating to the shares of the daughters, which have the appearance of being more mandatory in their signification. We refer to the words, " and that part of it which may belong to the daughters, married or single, *to be so trusteed* as that the income thereof shall be paid to them or either of them, on their own receipt," &c. Are these words to be construed as an imperative direction, restrictive of the broad discretion to trustee all or any part of the property previously conferred in the same sentence, which makes it the trustee's duty in making the division to trustee the shares of the daughters, or are they rather to be construed as words which simply point out the manner in which the trustee, in case he thinks proper to trustee the shares of the daughters, shall exercise that discretion. We prefer the latter construction as more consistent, on the whole, both with the structure of the sentence and with the direct and clear language in which the power is conferred. It may also be noted that the

words are, " to be so trusteed as that the income thereof shall be paid to them *or either of them,*" as if it were in the mind of the testator that the trustee would be at liberty to trustee the share of one of the daughters and not that of the other, in the exercise of his discretion. The giving of so large a discretion need occasion no surprise when it is remembered that the donee is the father of the beneficiaries, and consequently can have no motive to use it otherwise than for their good. An option to divide or hold in trust is clearly given him in the fourth clause.

Is the vesting of the beneficial interests given by the twelfth clause compatible with the existence of such a power or discretion on the part of the trustee ? We think it is. The rights of the beneficiaries are designed to exist independently of the exercise of the discretion, subject only to modification in the event of its exercise. The power or discretion is in the nature of a condition subsequent. It does not prevent the beneficial estates from vesting ; it only subjects them to a liability to be divested to a certain extent in case it is exercised.

The result, then, to which we are led, or rather to which we have painfully groped our way, is, that the beneficial interests given by the twelfth clause vested immediately upon the death of the testator in the children of his brother Daniel then living, and in the heirs-at-law, so called, through the brother's blood of the child then deceased. This is a result which may, indeed, in some of its consequences, disappoint the wishes of the testator ; but it is the result which best accords with the purpose which certain intimations of the will lead us to think he entertained, that the children of his brother and their heirs-at-law, so called, through the brother's blood, should have an immediate claim, subject to the prior contingent claim of his wife upon the residuary estate.

Then regarding the equitable interests as vested, the question recurs, Is there anything to prevent an immediate division of the property devised ? In considering this question it is to be borne in mind : first, that the testator's widow, for whose security the division was apparently delayed, consents to an immediate division, the security being superfluous or otherwise provided for ; second, that the beneficiaries desire and ask for an immediate division ; and, third, that Daniel Rogers, the trustee, wishes to

make the division without further delay, if it can be made consistently with his duty. In these circumstances, it seems to be entirely unnecessary to prolong the trust, unless the trustee wishes to create the new trusts which he has the discretionary power to create upon making the division after the decease of Mrs. Rogers. But the trustee, through his counsel, states that he does not wish any delay for that purpose, and prefers to relinquish this power rather than delay the division for the sake of exercising it. This we think he may do, the power being personal to himself, or, if possibly it may continue beyond himself, extending at the utmost only to successors of his own appointment, and whom he may appoint or not at his pleasure. We are therefore of the opinion that the trustee may properly divest himself of his trust, and of all the powers which he has as trustee under the will, by making an immediate division of the trust property ; and that we may properly enter a decree directing — or rather let us say, inasmuch as we might hesitate to direct a division if any party in interest were opposed to it — a decree giving the sanction of the court to such a division.

There are some incidental questions to be decided before the property can be divided, upon which the trustee desires the instruction or decision of the court.

It appears that James S. Rogers, one of the eight children of Daniel Rogers who were living when the will was made, died in the lifetime of the testator, unmarried, childless, and intestate. It is claimed that the share of the residue, which would have gone to him if he had survived has lapsed, and must be disposed of as intestate estate. We do not so construe the will. The devise is to Daniel Rogers in trust, to divide the residue " equally between his eight children now living or their legal heirs, *per stirpes* and not *per capita*, if any of them be dead when this bequest takes effect, and to trustee all or any part of the property so divided among his eight children or their heirs-at-law through his blood." Manifestly, if we ascribe to the words " when this bequest takes effect," the meaning which we have ascribed to them, the testator has not overlooked the possibility of the death of one or more of the eight children in his lifetime, and has, in his own belief at least, designated who shall take by substitution for them. And see *Finlason* v. *Tatlock*, L. R. 9 Eq. 258. The persons to take

by substitution are the heirs-at-law of the deceased through the blood of Daniel Rogers, and they are to take *per stirpes* and not *per capita*.   But, it is said, the father of James S. Rogers is his sole heir-at-law, and he is excluded from taking because the gift is to the heirs-at-law, through the blood of Daniel Rogers, *per stirpes* and not *per capita*, a description which is not appropriate to Daniel Rogers himself.   We agree that the description is inappropriate to Daniel Rogers.   The will also, which very clearly manifests a design to avoid intestacy, affords no express indication of intent to benefit Daniel Rogers, who is himself an affluent and aged man.   The general structure of the twelfth clause is likewise rather against the existence of such an intent.   It appoints Daniel Rogers to hold the property for others and divide it among them, rather than to participate in it himself.   We do not, however, agree that the effect of this view is to avoid the substitutional gift.   The result, in our opinion, is, that the heirship of Daniel Rogers is to be disregarded, and the substitutional gift is to be construed as a gift to those who would be the heirs-at-law of James S. Rogers through the blood of his father, if his father were individually disentitled to heirship.   Under this construction the seven children who survived the testator became entitled to the entire residue.   It is true, we disregard by this construction the technical meaning of the words " heirs-at-law ; " but in so doing, we do what other courts have done, — look through the words for the meaning which is behind them.  *Doody* v. *Higgens*, 2 Kay & J. 729 ;  *In re Porter's Trust*, 4 Kay & J. 188 ;  *Gittings* v. *McDermott*, 2 M. & K. 69 ; *In re Steevens's Trusts*, L. R. 15 Eq. 110.  It is also true that under this construction no effect is given to the words, *per stirpes* and not *per capita ;* but this is not through any fault of the construction, but because the words are inapplicable in the contingency which has happened.   If, besides James S. Rogers, a brother or sister had died in the lifetime of the testator, leaving several children, then, under precisely the same construction, the words would have their just effect upon the substitutional gift.

Four of the beneficiaries, sons of Daniel Rogers, are of full age and competent to transact business.   The trustee, of course, will have no difficulty in assigning to them their respective shares and in receiving from them the proper discharges.  A fifth beneficiary,

a son of Daniel Rogers, also of full age, is *non compos mentis.* He has as yet no guardian of his person and estate. Such a guardian should be immediately appointed to have the care and custody of the share set off to him. A sixth beneficiary, Maria Williams, who survived the testator, is now deceased, leaving a husband and a minor daughter. Her share, having vested in her on the death of the testator, passed, on her decease, the real estate to her heirs, subject to the curtesy of her husband, and the personal estate to her legal representative, to be administered and distributed according to the law of the state of New York, the state of her domicil. Her personal representative is Jonas Williams. He is a party to the suit, though not described as her representative in the suit. Her share of the personal property should be transferred to him, unless he consents to have it transferred directly to the distributees. The seventh beneficiary is Anna R. Case, the wife of Augustus L. Case. She is entitled to have her share of the real estate transferred to her. She is entitled to have her share of the personal property, or a portion of it, settled to her separate use if she so desires. Her wish should be ascertained. If she wishes no settlement it should be transferred to her directly.

In making the division, the trustee will, of course, make proper deductions for advances, so that none of the beneficiaries shall by reason thereof have any advantage over the others.

We have now passed upon all the questions arising upon the twelfth clause which we deem it necessary to decide for the instruction of the trustee. Other questions are made upon other provisions of the will, but there is no exigency requiring their immediate decision. When such an exigency does arise, it will be time enough for us to decide them. *Decree accordingly.*